SUN OIL COMPANY v. HEDGE.

Opinion delivered April 18, 1927.

1. PLEADING—NECESSITY OF REPLICATION.—In a suit for personal injuries, where defendant set up a release in defense, it was not necessary for plaintiff to file a reply alleging that the release was given under a mistake of fact induced by misrepresentations as to his condition made by defendant's physician.

2. RELEASE—EFFECT OF MISREPRESENTATIONS OF PHYSICIAN.—A release executed by an injured party, relying upon misrepresentations of the physician of the party responsible for the injury that it was slight and temporary, is not binding upon the party making it.

3. MASTER AND SERVANT—JURY QUESTION.—In an action for personal injuries, the question whether plaintiff's physical condition was caused by the injury sustained by him while employed by defendant was for the jury.

4. TRIAL—INSTRUCTION—ASSUMPTION OF FACTS.—An instruction that, if defendant was injured while in defendant's employ and was sent by defendant to a hospital to be treated by a physician, who assured him that he would be all right after a lapse of time, and that, relying upon such representation, which subsequently proved to be untrue, he executed a release, he would not be bound thereby, *held* not error as assuming that the physician was defendant's agent or that the physician made untrue representations.

5. TRIAL—INSTRUCTION—GENERAL OBJECTION.—In a suit by an employee for personal injuries, an instruction on damages for personal injuiries was not open to a general objection in failing to include the questions of comparative negligence and contributory negligence, no request therefor being made.

6. APPEAL AND ERROR—HARMLESS ERROR.—An instruction on assumed risk which spoke of the "defendant" assuming all risks incident to his employment could not have been prejudicial where it was apparent that the word "defendant" was inadvertently used for "plaintiff."

7. MASTER AND SERVANT—ASSUMED RISK.—A servant does not assume the risk of injury from the negligence of his fellow servants, which was unknown to him and the danger of which he could not appreciate.

8. MASTER AND SERVANT—ASSUMED RISK—BURDEN OF PROOF.— Assumption of risk is an affirmative defense, and the burden of proving it rests upon defendant unless it is shown by plaintiff's testimony.

9. RELEASE—INSTRUCTION.—In a suit by an employee for personal injuries, an instruction that, if the employee executed a release without fraud or misrepresentation on defendant's part, then plaintiff could not recover, was properly refused, since the release was not binding if made under misrepresentations made by a physician furnished by defendant.

10. TRIAL—ABSTRACT INSTRUCTION.—It was not error to refuse an instruction not based on the evidence.

11. NEGLIGENCE—INSTRUCTION AS TO CONTRIBUTORY NEGLIGENCE.—In a suit by an employee for personal injuries, a requested instruction that, if plaintiff gave orders to lower the trap before the guy wires were released, thus causing his own injury, he could not recover, was erroneous, as, under Crawford & Moses' Dig., § 7145, contributory negligence would not bar a servant's right of recovery, but only required a diminution of damages in proportion to the amount of negligence attributable to plaintiff.

Appeal from Lafayette Circuit Court; *James H. McCollum,* Judge; affirmed.

STATEMENT BY THE COURT.

This appeal is prosecuted by the Sun Oil Company from a judgment for $3,000 damages returned against it in favor of Ben Hedge, on account of a personal injury received by said Hedge while in the employ of the said oil company.

Complaint alleges that plaintiff, with his crew of four other employees, was engaged in "throwing" a gas-trap, that is, stripping the flow-line connection from the gas-trap, the gas-trap being a pipe about 70 feet long, set on the ground in a vertical position, and used to separate

the oil from the gas. It was held in position by four guy-wires fastened near the top and extending in different directions to the ground where they were fastened. That, to remove the trap, it was necessary to unfasten the guy-wires from the bottom and throw the trap in the direction in which it was to fall. That, to do this, it was necessary to hold the guy-wires after they were unfastened until a given signal from the plaintiff, when it was their duty immediately to release the guy-wires, so that the plaintiff could pull the trap in the direction in which it was to fall. Two of such traps had been removed, and plaintiff and his co-employees were engaged in removing the third when the injury complained of occurred. That the guy-wire to said trap had been unfastened at the bottom and plaintiff's co-employees had hold of them when plaintiff gave the signal for them to release the guy-wires; that his co-employees failed and neglected to immediately release said guys as directed by plaintiff, and, as a result thereof, the trap was swerved from the course in which it was intended to fall, in a northerly direction, causing a tree to intervene between the point where the trap fell and where it should and would have fallen if plaintiff's co-employees had released the guy-wires as they were directed and as it was their duty to do. That, by reason of the falling of the trap at the point where it did fall and the intervention of the tree between the point and the point where the plaintiff was standing and where the trap should have fallen, the guy-wire which the plaintiff had hold of, and by which he was attempting to guide the fall of the trap, was drawn around and against said tree in such a manner that, when it was tautened, it struck the plaintiff in the abdomen and side, breaking two of his ribs and severely bruising and injuring him in the abdomen and side. That, if the plaintiff's co-employees had released the said guy-wires as it was their duty to do, said trap, by the guidance of the plaintiff, would have fallen at a point where such an injury as occurred to plaintiff could not have happened, and that said injury was due

solely to the negligence of plaintiff's co-employees by failing to release the wires which they held, as they were instructed to do.

It states further that the defendant company caused him to be treated by its physician; that he remained in the hospital for four days, suffering severe pains in his abdomen and side; and that he was unable to work for thirty days, after which he was given a pumping job requiring no great exertion, and he continued at that work until the 15th of the following May. That thereafter he began to suffer severe pains in his bowels, and any exertion requiring the exercise of the muscles of the abdomen caused him intense pain, and that the condition finally became worse and became so aggravated that he was rendered incapable of performing any manual labor, and that he had to undergo an operation in order to get relief. He was operated on in January, 1925, when it was discovered that his injury had resulted in adhesions of the liver, stomach, intestines and gall bladder. Since the operation he has only suffered slight and dull pains in the region of one of the floating ribs. That two of the ribs are crooked since healing to such an extent that they materially interfere with the normal operation of his body, and that he suffered much pain, lost 30 days from work following the injury, and has ever since been incapacitated from performing his usual and customary work. That he was a strong, able-bodied man, 28 years old, earning $180 per month at the time of the injury, and had expended $500 on account thereof.

The answer denies every material allegation of the complaint. Denies that the guy-wires attached to the trap had all been unfastened at the bottom before plaintiff gave the signal for the men to release them; denies specifically that allegation of the complaint relating thereto, that the injury occurred as stated, and that it was due solely to the negligence of the plaintiff's co-employees by failing to release the guy-wire which they held as they were directed to do; admitted that plaintiff worked for

the company subsequent to his injury until the 15th day of the following May; alleged that injury resulted from his own carelessness and negligence, being the foreman in charge at the time of his alleged injury, wholly failed to take the proper precautions in dismantling said gas trap, or in attempting to throw the said gas-trap to the ground; that he, the said plaintiff, did not require his men to unfasten the guy-wires which were wrapped around trees, eight or ten feet from the gas-trap, before ordering the trap to be thrown to the ground; also pleaded contributory negligence and assumed risk, and a full release from all liability, executed by plaintiff on the 16th day of March, 1923.

The testimony tends to show that plaintiff was the gang pusher of the pipe-line crew and foreman to direct the work over the men, and, if necessary, to help in performing the labor; was engaged in throwing gas-traps, as alleged in the complaint, when the injury occurred, and had been engaged in that work for 12 or 15 days; had thrown two traps of the same kind as the one by which he was injured and two of other styles. He described the occurrence as follows: "The trap we were working on at the time I was injured consisted of an iron pipe about seventy feet high and held in position by four guy-wires fastened to the top of the pipe and extending in four different directions to the ground, where they were fastened to stakes and trees. I was directed by Joe Tipson, foreman of the company, to do this work, and the only directions he gave me was to throw them down, turn-loose the guy-wires and throw them down in a manner to save them if I could. My only experience in throwing these traps consisted of about two days' work altogether. In order to do this work, first we stripped the trees of everything, then we took the guy-wires loose from their permanent wrap. We kept one wrap to hold it until I got everything ready. The men were holding these wires where they were tied to the trees and stakes, and, at a given signal, they were to release the wires, and, by pulling of the wire that I held, the trap was guided in the direction I wanted

it to fall. I had personally seen that the wires had been released and were in position before I gave the signal. I gave the signal 'ready,' 'let's go,' or something like that, and the man to my right failed to turn loose. He was out of my sight. There was nothing in the way to keep the men from releasing the wire, if they had obeyed instructions. If the man had released his wire, the trap would have fallen in the way I was pulling. The ones I had already thrown had fallen the way I intended. As the men to the left were slow in turning their line loose, this line on the trap had fallen four feet out of its course before these men to the right ever turned loose. When the trap fell there was a tree here, and the cable went around the tree, and snapped back and hit me across the side and back. Floyd Collins was holding the line with me and helping me guide the trap—he was on the left side of the wire, and out of danger. There was no danger in my position if the men had turned their wire loose as directed. The trap weighed about 1,200 pounds. The men understood what they were to do when the release call was given; they helped me to throw the other two traps. Immediately after I was knocked down by this guy-wire I just felt as if the breath was knocked out of me. That was practically all the pain I had at that time. I had cramps and pain. There was a little streak around my whole body, except a small place in front. I was about a mile from home; I walked this distance, and, while walking home, I had to creep and hold my abdomen as hard as I could with my hands. I cleaned myself up as best I could, and had a little supper. We sent for a doctor then. The company doctor came out there about 11 o'clock. Jess Thomas went after the doctor; he saw Mr. Parks in town, and he went with him to Dr. Neiheuss. He came about 11 at night. The next time I sent for Dr. Neiheuss he sent an ambulance for me. I stayed in the hospital four days. The hospital belonged to Dr. Neiheuss. He bandaged me up, and the nurse gave me an enema. When I left the hospital, the doctor had not declared my condition. I was still wearing an adhesive

tape bandage, which I kept on about ten days. After the bandage was taken off, the doctor gave me a prescription for some medicine; he said it was for my spleen.''

Plaintiff stated that the guy-wires had been released and unloosed, except just enough to hold until he gave the signal to let go; that all the other men were in sight but one when he gave the signal, and the signal was given so all could hear. When the pipe fell, it whipped the guy-wire around the tree, and the end struck plaintiff across the abdomen and side. He remained at the place of injury about 20 minutes, and was able to go home by himself. Later he was sent to the hospital by appellant company, and was under the observation of Dr. Neiheuss.

Plaintiff admitted that no representations were made to him about his condition at the time he signed the release, and that he signed it voluntarily, understanding its effect; stated that Dr. Neiheuss had made representations to him before signing it, answering the question relative thereto as follows: ''The day I brought the X-ray picture back to Dr. Neiheuss, he told me, he says, 'That shows no fracture.' I asked him in particular if it showed a rupture of the diaphragm. He said no, that the muscles around my ribs were out of place, and when they became normal they would be all right.'' He said he executed the release upon these representations about four months after they were made.

Dr. Neiheuss stated that he operated a hospital of his own at El Dorado, and treated appellee for the injury, and sent the bill to the oil company. That he saw appellee on the evening of the 16th or the morning of the 17th of November, 1922, and he came to the hospital on the 17th and remained there two days, and was discharged. He returned the 2d of December, and was treated again two or three times before being discharged. He remembered that plaintiff was injured by a guy-wire striking him on the side, lower abdomen or lower chest, over the ribs, and he had a bruised condition. The X-ray taken did not show any fracture of the ribs, and there were no symptoms of any severity that would indicate a fracture.

His general condition was not sufficient to keep him in the hospital any longer than two days, and he told him that he thought he was ready for duty, and would be all right, as was usual in such cases, but, if he did not get all right, to return for treatment. He never returned. Further stated that plaintiff made no complaint about any trouble with his gall bladder, and that, after his treatment of him at the hospital and the examination of the X-ray made, if he, in 1925, had adhesions affecting the gall bladder, witness would not have attributed it to that injury; that adhesions must be the result of an inflammatory condition; plaintiff had no symptoms, at the time he was treated for the injury, of any such trouble. Witness had never had a case of adhesions involving the gall that was caused from an outside injury, and did not think any adhesions involving the gall bladder in 1925 could have been caused by the injury; that such inflammation of the gall bladder region is caused by infection, and none of these conditions existed at the time he made the examination and treated plaintiff.

Other physicians testified to like effect, but one thought that the condition might possibly have developed from the injury, and plaintiff testified that it did.

The court instructed the jury, giving, over appellant's objections, instructions No. 2 and No. 3, and on its own motion gave No. 2 as follows:

"No. 2. If you find from a preponderance of the evidence that the plaintiff was injured while in the employ of the defendant, and was sent by the defendant to a hospital to be treated; that he was treated by a physician or physicians employed in said hospital, and was by said physician discharged; that, later, he returned to the hospital for examination and information, and was assured by the physicians so treating him that there was nothing seriously wrong with him and it would only require time for the muscles and ligaments to heal and stretch, and, after a lapse of time, he would be all right; that the plaintiff believed said representations to be true, and, relying upon such representations, he executed the

release offered in evidence by defendant, and would not have executed said release but for such representations, and it turned out that such representations were untrue, the plaintiff would not be bound by such release, and you should find for him upon that issue.

"No. 3.    If you find for the plaintiff you will assess his damages at such sum as will compensate him for the bodily injury sustained, if any; the physical and mental anguish suffered and endured by him in the past, if any; and that which he will endure in the future, if any, by reason of the said injury; his loss of time, if any, and his pecuniary loss from his diminished capacity for earning money in the future, if any; and from these, as proved from the evidence, assess such damages as will compensate him for the injuries received."

"No. 2.    You are instructed that, while the defendant assumed all risks incident to his employment, yet you are further instructed that he assumed no risk incident to the negligence of his fellow-employees."

The court refused to give appellant's requested instructions Nos. 4 and 5, as follows:

"No. 4.    If you find from the evidence that plaintiff, Ben Hedge, did, on the 16th day of March, 1923, execute the release in the words and figures set out in defendant's answer, without fraud and misrepresentation on the part of the defendant, its servants and employees, and for the consideration named in said release, then the plaintiff is bound by his release, and cannot recover, and your verdict will then be for the defendant.

"No. 5.    If you find from the evidence in this case that the plaintiff was foreman at the time and place of the injury, and that, as such foreman, it was his duty to see that the guy-wires were released before the trap was lowered, and that the plaintiff gave orders to lower the trap before the guy-wires were released, and that this was the cause of the injury complained of, and you so find from the evidence, you will find for the defendant."

And also to instruct a verdict in appellant's favor.

The jury returned a verdict against appellant, and from the judgment thereon this appeal is prosecuted.

*T. M. Clifford* and *Norwood & Alley*, for appellant.

*Lake, Lake & Carlton*, for appellee.

Kirby, J., (after stating the facts). It is earnestly insisted by appellant that the court erred in not giving its instruction No. 1, directing the jury to return a verdict in its favor. It is true, as appellant contends, that plaintiff did not plead fraud, misrepresentations or mistake in the procurement of the release, which appellee admitted that he signed voluntarily and understanding its effect, about four months after he had been discharged from the hospital after treatment for the injury, and resumed work. It was not necessary, however, for plaintiff to file a reply alleging that the release was given under a mistake of fact as to his condition, brought about by the misrepresentations of the physician that had treated him, at appellant's instance, at the time of his discharge from the hospital. The answer setting up the release as a discharge from liability did not relate to a counterclaim or set-off, and is deemed controverted, in legal contemplation, as though by direct denial of the allegation or an avoidance of its effect, by such a statement of its procurement as was proved. Section 1231, C. & M. Digest.

This court has frequently held that a release executed by an injured party, relying upon the mistaken opinion of the physician of the party responsible for the injury that it was slight and temporary, and not permanent, is not binding upon the party making it. *St. Louis, I. M. & S. R. Co.* v. *Hambright*, 87 Ark. 614, 113 S. W. 803; *St. Louis, I. M. & S. R. Co.* v. *Reilly*, 110 Ark. 182, 161 S. W. 1052; *St. Louis, I. M. & S. R. Co.* v. *Morgan*, 115 Ark. 529, 171 S. W. 1187; *Griffin* v. *St. Louis, I. M. & S. R. Co.*, 121 Ark. 433, 181 S. W. 278; *C. R. I. & P. Ry. Co.* v. *Smith*, 128 Ark. 233, 193 S. W. 791; and *Kiech Mfg. Co.* v. *James*, 164 Ark. 137, 261 S. W. 24.

This release was executed more than four months after plaintiff was discharged from the hospital, and without any representations whatever made by appellant

to appellee, at the time of its execution, relating to his condition and injury; but the jury apparently believed that appellee relied upon the statement made by the physician employed to treat him, at the time of his discharge from the hospital, that his injury was only temporary and not serious and permanent, and also that the serious condition which developed, necessitating the operation in 1925, was the result of it, notwithstanding the majority of the experts testified that such condition could not have resulted from an outside injury, and was caused from some infection. One physician, however, stated that it might have resulted from such an injury, and appellee testified that it did, and the evidence cannot be said to be undisputed, and the court did not err in refusing to direct a verdict.

No error was committed in the giving of instruction No. 2 complained of. It does not assume that Dr. Neiheuss was an agent of the appellant, as is contended, but leaves to the determination of the jury the question of whether the appellee had been sent by appellant company, after his injury, to the hospital of Dr. Neiheuss for treatment, and also the question of whether or not the physician made to him the untrue representations that his injury was slight and temporary, and but for reliance upon which the release would not have been executed.

It is true that Dr. Neiheuss conducted an independent hospital, but treated, at the appellant's instance, some of the persons injured in its service, and the appellee, by its express direction, as the undisputed testimony shows.

Appellant next contends that the court erred in giving plaintiff's requested instruction No. 3. Only a general objection was made to the giving of said instruction, however, and, if appellant had desired that it should have included the question of comparative negligence or for diminution of the amount of damages on account of the alleged contributory negligence of plaintiff, it should have made such specific objection thereto, or have asked a correct instruction including such phase of the law,

It is obvious, too, that the court, in instruction No. 2, given on its own motion, intended to instruct the jury that the *plaintiff* assumed all risk incident to his employment, instead of the *defendant,* as stated, but a specific objection would have doubtless resulted in the correction of this instruction, which would not have been misunderstood, anyway, it being apparent that the word *defendant* was inadvertently used instead of plaintiff. Under the law the servant does not assume the risk of injury from the negligence of his fellow-servants, which was unknown to him, and the danger of which he could not appreciate, and nothing had occurred, as shown by the undisputed testimony herein, in the conduct of appellee's helper before the falling of the pipe, to indicate that he was not discharging and would not discharge the duty incumbent upon him, which appellee had the right to assume that he would do. *C. R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 273 S. W. 15; *Bruce* v. *Yax,* 135 Ark. 480, 215 S. W. 265.

Assumption of risk is an affirmative defense, and the burden of proving it rests upon the defendant, unless it is shown by plaintiff's testimony. *Central Coal & Coke Co.* v. *Burns,* 140 Ark. 147, 215 S. W. 265.

No error was committed in refusing to give appellant's requested instruction No. 4, this question being sufficiently covered and submitted by instruction No. 2, given at plaintiff's request, and No. 3, at the request of defendant, and the court's instruction that the jury should consider all instructions together and as a whole. Then, too, the instruction is not an accurate statement of the law, under the circumstances of this case, since fraud and misrepresentation on the part of the defendant, its servants and employees, was not necessary to be shown in the procurement of the release in order to avoid it, but only the condition as disclosed in said instruction No. 2, given, resulting from reliance upon representations honestly made by appellant's physician, to whom appellee was sent for treatment, and relied upon as being true

by appellee when making the release, and which later proved to be untrue.

There was no testimony upon which to base appellant's requested instruction No. 5, refused, and, if it could be regarded, in effect, an instruction on contributory negligence, it was not a correct declaration, since contributory negligence would not bar the servant's right of recovery, but only require the diminution of damages by the jury in proportion to the amount of negligence attributable to the injured employee, and no error was committed in refusing to give it. Section 7145, C. & M. Digest.

We find no prejudicial error in the record, and the judgment is affirmed.