KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* SANFORD.

Opinion delivered October 20, 1930.

*Frank H. Moore* (Kansas City, Mo.), *A. F. Smith* and *James B. McDonough,* for appellant.

*S. P. Jones, Franklin Jones* (Marshall, Texas), and *Steel & Edwards,* for appellee.

BUTLER, J. Appellee, plaintiff in the court below, was a switchman in the employ of the appellant railway company and engaged in the work of moving interstate commerce which was being transported by the defendant, a common carrier by railroad, and engaged at the time in commerce as such between the States. On the 11th day of December, 1927, while employed as aforesaid, appellee received severe personal injuries by reason of the defective condition of the track over which commerce was being handled in Shreveport, Louisiana.

There is no conflict in the evidence with reference to the manner in which the injury was received or the cause of it. This evidence conclusively establishes the freedom of the appellee from blame and the negligence of the appellant company. The injuries were not thought to be serious or permanent, and, after having been confined at his home for a few days, the appellee reported to the company physician, and on being advised that he was able to return to work reported for duty. He was informed by the yardmaster that he could not begin work until he had signed a release. On the 26th day of September a release was executed and appellee was paid the sum of $92.68, that being the amount which would have been due him had he continued at work from the 11th of September to the 26th, and was payment for this lost time. Appellee returned to work on the 27th of September, and soon after began to suffer from unaccustomed pains and soreness and stiffness of the body and progressively grew worse until January 5, 1928, when he had to stop work and go to the hospital where he remained for twenty days under the examination and treatment of physicians. A short time after his release from the

hospital on March 26, 1928, he was discharged from the service of the company because his physical condition was such that he could no longer perform his duties.

Appellee filed this action on March 9, 1929, alleging the nature and extent of his injury, and that it was caused by the negligence of the appellant company. The appellant answered denying the allegations of the complaint and pleading the settlement and release before executed in bar of the action, to which plea appellee replied alleging that the settlement was procured by fraud, and was the result of a mutual mistake. The jury found the issues in favor of the appellee and returned a verdict in favor of the appellee in the sum of $22,500, on which judgment was accordingly entered and from which the appellant has duly prosecuted this appeal.

As before stated the evidence established the negligence of the appellant and the resultant injury to the appellee while in the performance of his duties and in the exercise of ordinary care for his own safety. There is also but little, if any, conflict in the testimony relative to the physical condition of the appellee at the time of the trial, the great weight of the evidence being to the effect that he was suffering from a diseased condition of the vertebrae which rendered him unable to perform manual labor and which would probably never be any better, but would progressively become worse. The cause of that condition, however, was a matter of dispute upon which the testimony was in sharp conflict, that of the appellant tending to show that appellee's condition was the result of rheumatic trouble arising from an unknown origin and which was antecedent to the injury received on September 11, which injury, it is contended, was slight and not permanent. The testimony on behalf of the appellee, on the other hand, tended to show that prior to the injury appellee was a man of more than ordinary strength and vigor, was in good health, and that his then physical condition was the result of the injury received. This question was submitted to the jury under proper instructions,

and its verdict on this issue is conclusive here, and no question is raised as to the amount of the verdict.

During the trial of the case the appellant interposed numerous objections to the action of the trial court in its rulings on the admissibility of testimony, to the action of the trial judge in himself propounding questions to witnesses, to the refusal of the court to give a number of instructions requested by the appellant, and in giving other instructions on its own motion and at the request of the appellee, and to improper remarks made by counsel during the course of their argument and here urged as error.

One of the assignments of error was for the court's action in overruling appellant's motion to suppress the deposition of certain witnesses taken before a notary public in the State of Texas. The record discloses the fact that the appellant was represented by counsel at the taking of the deposition, and no objection was there interposed to the manner of taking or the form, the only right to object reserved was to the competency, relevancy and immateriality of the questions and answers. Appellant argues that the certificate of the notary public fails to show that the witnesses were sworn, but it does not state that they were not sworn. Appellant complains also that the testimony was taken down by the notary public in shorthand, and that this was a failure to meet the requirements of the statute that the stenographer taking down the testimony must be sworn. Had the appellant not been represented by counsel at the taking of the deposition, the certificate would have been defective, but since appellant was so represented we must assume that the deposition was regularly taken, and that all irregularities were waived since only the right to object to the deposition for competency, etc., was reserved. The requirement that the stenographer must be sworn (§ 4235, C. & M. Digest) has no application where the notary himself takes down the testimony. The correctness of his action is guaranteed by his oath of office, and it would be im-

material in what manner the testimony was written, in the absence of a specific objection.

Appellant moved to transfer the cause to equity and complains of the action of the court in overruling its motion. The court did not err. The case was properly triable at law, and the appellant was entitled to present all the grounds of defense pleaded. *St. L. I. M. & S. R. Co.* v. *Smith*, 82 Ark. 105, 100 S. W. 884.

We now pass to what we consider the important questions involved, namely, is the release executed September 26, 1927, valid and binding, or was it entered into through mutual mistake or procured by false representations of the appellant's agents believed and relied upon by the appellee, and were these issues properly submitted to the jury under correct instructions? It is admitted that the settlement and release executed in accordance therewith was signed by the appellee with full knowledge of its terms, and is a complete bar to his cause of action unless entered into through mutual mistake or procured by false representations believed and relied upon by the appellee. In order to appreciate the effect of the representations on the mind of the appellee regarding the extent and probable duration of the injury, it is necessary to briefly consider and review the circumstances attendant upon the incident of appellee's injury and what occurred to him thereafter that might be attributable to his injury. To perform his duties as switchman in the yards of the appellant company, it was necessary for appellee to stand on the running board of the locomotive while it was moving to and fro. While in this position and while the locomotive was moving at the rate of from six to eight miles an hour, an obstruction on the track came in contact with the running board of the locomotive bending it so as to cause the appellee to fall. He fell forward and in front of the running board which caught his body as the locomotive continued to move, doubling him under it and rolling him forward some 25 or 30 feet before the engineer who witnessed the fall could bring the

engine to a stop. Appellee was extricated by his fellow workmen. His clothing was badly torn, one shoe heel ground off by the revolving wheel of the engine, he was badly shocked, and complained at the time of an injury to his shoulder. After a short time he recovered sufficiently to climb into the cab without assistance and there rode the engine to within about five blocks of his home where he descended and started in that direction. He had to sit down to rest twice before reaching home and the following morning remained in bed and sent for the company physician who came and made a perfunctory examination of his body. Appellee requested on several occasions that the physician come again, but this request was not complied with and within three or four days he was able to go to the doctor's office and there a splinter was taken from his body and a bit of germicide of some sort put on his abrasions. In a few days he went back to work, but soon discovered that he was not improving but growing steadily worse, until he had to stop work and was finally discharged from the service of the company because of his physical condition.

Appellee testified that when "he (Dr. Quinn, the company physician) saw me at my home, all he done out there was to put mercurochrome where I was scratched. He never did anything to my back at all; when I went to his office he did nothing for my back; I saw him in his office about four times, I think. During that time I was still suffering. The last time I was at his office was September 23—some eleven or twelve days the pain and swelling had not left my body at that time. I had a conversation with Dr. Quinn at that time. He told me that the best thing I could do would be to return to work; that the exercise and use of my muscles would cause this soreness to disappear—that the exercise would cause the remaining soreness to disappear and in a few days I would be as good as I ever was. He said my injuries were merely sprains and bruises and no bones or bony structure was injured, and as soon as I returned to work

that the remaining soreness would disappear, and I would be as well as I ever was before I was injured. I certainly did believe that." Appellee further testified, "The claim agent visited me in Shreveport on the 26th, I believe it was, for the purpose of settling my claim. I talked with him. I told him what Dr. Quinn told me. He said he had also talked to the doctor and that the doctor told him my injuries were merely sprains and bruises; that when I returned to work the remaining soreness would disappear. He told me that the doctor knew what he was talking about; that the doctor assured him that my condition was not and had not been serious. I asked the claim agent for $200 and straight time for settlement. The claim agent represented that I was not seriously injured and was able to return to work and continue to work as well as I ever was before I was injured. He would not give me any more than straight time. He gave me straight time—paid me for fourteen days' work for the time I was off. I accepted that. I accepted the settlement because the doctor told me my condition was not serious—that there was no bone or bony structure hurt—that when I returned to work the exercise would cause the soreness to leave and I would be as good a man as I ever was. The claim agent told me that I was not seriously injured; that I was able to return to work and continue to work as well as I did before I was injured. I believed that to be true at that time. That caused me to make the settlement."

The doctor and claim agent denied that any such statements had been made by them. This denial created an issue of fact which was determined by the jury in favor of the appellee, and this is conclusive upon us if the evidence as accepted by the jury was sufficient to establish a state of facts that would justify an avoidance of the release. These facts are sufficient and bring this case within the rule announced in the case of *St. L. I. M. & S. R. Co.* v. *Hambright*, 87 Ark. 614, 113 S. W. 803, 804. In that case the misrepresentation of the physician relied on

was that when the doctor examined Hambright he told him his injuries were not serious, that he would be able to go to work by the first of March, and he replied to him, "Doctor, it is up to you—I don't know and I want to know just what you think," and the doctor said, "It is nothing bad, and you will be all right by the first of March." Hambright further stated that at the time the settlement was being negotiated the claim agent called the physician over the telephone and, after inquiring as to Hambright's condition, listened a few moments, and then turned to witness and said, "The doctor says that you are not badly hurt and that you will be able to go to work by the first of March." Hambright said he placed every reliance upon the statement of the doctor, thought he knew what he was talking about, consulted no other doctors at that time regarding his condition, and after receiving information from Jones, the claim agent, he made the settlement and executed the release.

It was the contention of the appellant in that case that the evidence was not sufficient to show that the appellee was either deceived or misled or that any fraud was practiced on him in obtaining the settlement. In discussing this question, the court cited and reviewed a number of cases and concluded by saying, "The appellee's evidence fully meets the requirements of the authorities to avoid a release induced by fraud." That case has been followed and approved in a line of decisions beginning with the case of *St. L. I. M. & S. R. Co.* v. *Carter,* 93 Ark. 589, 126 S. W. 99. Among the later cases approving the doctrine announced in the Hambright case, *supra,* are the cases of *Newsum, etc. Co.* v. *Shoemaker,* 173 Ark. 872, 294 S. W. 11; *Sun Oil Co.* v. *Hedge,* 173 Ark. 729, 293 S. W. 9; *F. Keich Mfg. Co.* v. *James,* 164 Ark. 137, 261 S. W. 24; *Mo. Pac. Ry. Co.* v. *Elvins,* 176 Ark. 743, 4 S. W. (2d) 528.

The court submitted the foregoing question to the jury under proper instructions, but on the degree of proof required gave the following instruction: "The jury are

instructed that if they find that the settlement entered into between the plaintiff and defendant was not based upon false misrepresentation or mutual mistake, you will find for the defendant, and the burden devolves upon the plaintiff to prove by a preponderance of the evidence that such misrepresentations were made or mutual mistake existed.'' The appellant earnestly insists that the giving of this instruction was error in that it authorized a verdict for the plaintiff on a bare preponderance of the evidence, and that in this kind of a case it was not sufficient for the plaintiff to establish his case by mere preponderance of the evidence, but that the jury should have been instructed that the burden was upon the plaintiff to establish its allegations of fraud or mistake ''by evidence clear, cogent and convincing,'' and relies upon the case of *Chicago etc. Ry. Co.* v. *Wilcox* (C. C. A.), 116 Fed. 913, and the case of *Wallace* v. *Skinner,* 15 Wy. 233, 88 Pac. 221, to support its contention.

It will be noted that the first-named case was a suit in equity to cancel a written release, and in that case the court held that a release might not be rescinded for fraud or mistake unless the evidence of fraud or mistake is clear, unequivocal and convincing. This is likewise our rule in equity cases where fraud or mistake is pleaded and affirmative relief sought. *Ogletree* v. *Smith,* 176 Ark. 597, 3 S. W. (2d) 683. But the instant case is a suit at law and the allegation of fraud or mistake is defensive only, no cancellation of the written instrument being asked, but its consequence merely sought to be avoided. The Wyoming case, *supra,* was an action at law for a recovery of damages, and the defense of fraud or mistake was offered in avoidance of a release pleaded in bar to the cause of action. In that case the court laid down the clear preponderance rule, but we have been unable to find any support for this case, but think the weight of authority and the decisions of our own court are to the contrary. This view is supported by the case of *Capitol Traction Co.* v. *Smead,* 58 App. D. C. 141, 26 Fed. (2d)

296, page 303; *Lumley* v. *Wabash Ry. Co.* (C. C. A.), 76 Fed. 66; *St. L. I. M. & S. R. Co.* v. *Phillips* (C. C. A.), 66 Fed. 35, while in this State the mere preponderance rule has been uniformly given to juries without any question raised and considered by this court without criticism, and tacitly approved. *Ind. Mut. Ind. Co.* v. *Thompson,* 83 Ark. 575 (582), 104 S. W. 200, 10 L. R. A. (N. S.) 1064, 119 Am. St. Rep. 149; *St. L. I. M. & S. Ry. Co.* v. *Hambright,* 87 Ark. 614, 113 S. W. 803; *St. L. I. M. & S. R. Co.* v. *Carter,* 93 Ark. 589 (594), 126 S. W. 99; *F. Kiech Mfg. Co.* v. *James,* 164 Ark. 137 (142) 261 S. W. 24; *St. L.-S. F. Co.* v. *Cox,* 171 Ark. 103, 283 S. W. 31; *Sun Oil Co.* v. *Hedge,* 173 Ark. 729, 293 S. W. 9.

In the case of *Rice-Stix Dry Goods Co.* v. *Montgomery,* 164 Ark. 161, 261 S. W. 325, 329, the issue was whether the maker of the note sued on was induced to execute the same through fraud and misrepresentation. In that case it was argued that the burden of proof was on the maker the same as if he was asking in equity to rescind his contract and cancel the note. A number of cases were cited to sustain that view. In referring to those cases this court said: "But the rule in these cases, to-wit, that before equity will cancel, set aside, or reform a deed or instrument for fraud, the proof of the alleged fraud must be clear, convincing, and unequivocal, has no application to actions like this at law. Here no affirmative relief of cancellation or reformation of an instrument is sought, but the defense is simply that of nonliability because of deceit and fraud in procuring the instrument which is the foundation of the action. While fraud at law, as well as in equity, is never to be presumed and must be proved, yet in actions at law one who has the burden of proof to establish fraud meets the requirements of the rule when he proves the fraud only by a preponderance of the evidence."

It is the contention of the appellant that, although this might be the rule in this court, it cannot be applied in the instant case as the injuries received by reason of

appellant's negligence are determinable by the Federal Employers' Liability Law (45 U. S. C. A., §§ 51-59) as interpreted and applied by the decisions of the federal courts. In the first place, it may be said that we have not been able to find where the federal courts have laid down the rule that in actions at law in defending against the validity of a release the degree of proof required should be clear, unequivocal and convincing, nor do we understand that such rule, if held by the federal courts, would be binding upon this court in the instant case. The Federal Employers' Liability Act and the principles announced by the federal courts for its interpretation and application are limited to a declaration of the substantive law fixing liability and the conditions under which causes of action may exist, but the remedies for making effective those rights or enforcing the liabilities created must be determined by the laws of the forum in which the action is brought. This appears to be clearly implied from the language used by the court in *Minneapolis & St. Louis Ry. Co.* v. *Bombolis,* 241 U. S. 211, 36 S. Ct. 595, 598, 60 L. ed. 961, Ann. Cas. 1916E, 505, L. R. A. 1917A, 86, where it is said: "It is conceded that rights conferred by Congress, as in this case, may be enforced in State courts; but it is said this can only be, provided such courts in enforcing the Federal right are to be treated as Federal courts and be subjected *pro hac vice* to the limitations of the seventh amendment. And, of course, if this principle were well-founded, the converse would also be the case, and both Federal and State courts would by fluctuating hybridization be bereft of all real, independent existence. That is to say, whether they should be considered as State or as Federal courts would from day to day depend not upon the character and source of the authority with which they were endowed by the government creating them, but upon the mere subject-matter of the controversy which they were considering." That the right to recover for the injury and the rules by which that injury is to be established is governed

by the act of Congress as construed by the Federal courts cannot be denied. To our mind, it is equally certain that where the action is brought in a State court the procedure for making effective that right is determinable under the rules of procedure in that State. We are therefore of the opinion that the instruction quoted, *supra*, was properly given. See also *St. L.-S. F. R. Co. v. Cox*, 171 Ark. 103, 283 S. W. 31.

The abstracts and briefs presented for our consideration are of such volume as to make a detailed discussion and analysis of all the questions raised impractical. We have endeavored to discuss the most salient features and those which appear to have been most doubtful. On the whole case, it is our conclusion that there was no prejudicial error committed in the trial of the case, that the issues were fairly presented to the jury, and its verdict is supported by substantial evidence.

Affirmed.