St. Louis, Iron Mountain & Southern Railway Company *v.*

Hambright.

Opinion delivered November 2, 1908.

1. Release—Fraud.—If the chief surgeon of a railroad company fraudulently represents to an injured employee that his injuries are slight and temporary when they are serious and permanent, and thus induces him to sign a release of the railroad company from damages, such release is not binding. (Page 621.)

2. Same—Mistake of Fact.—If the chief surgeon of a railroad company in good faith represents to an injured employee that his injuries are slight and temporary when they are serious and permanent, and thereby misleads him into signing a release of the railroad company from damages, such release is not binding. (Page 623.)

3. Master and Servant—Right of Servant to Rely upon Surgeon's Statement.—Where a railroad surgeon was employed by the railroad company, but his compensation came from assessments paid by the employees, and his examinations of employees were made in behalf of the employees as well as the railroad company, an injured employee had a right to rely upon statements made to him by such surgeon with reference to the extent of his injuries. (Page 624.)

4. Release—Fraud—Tender of Consideration.—Where an employee was induced to sign a release of damages for personal injuries by false

representations that it was a receipt for wages during the time of his injury, it was not necessary for him to tender the consideration of the release before suing to recover for his injuries. (Page 624.)

5. EVIDENCE—CONTRADICTION OF WRITING BY PAROL.—The rule of evidence which forbids the addition to or alteration or contradiction of a written instrument by parol testimony of antecedent and contemporaneous negotiations does not apply where there is an issue of fraud in the procurement of the writing. (Page 625.)

6. APPEAL AND ERROR—INSTRUCTIONS—GENERAL EXCEPTION.—A general exception to the refusal of the court to give a number of instructions will not be considered on appeal if any of the instructions asked is bad. (Page 625.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

Hambright was a brakeman on a freight train, in the employ of the appellant railroad company, and on August 10, 1906, was knocked from his train by a defective water-spout at Austin and seriously injured. He was taken to his home in Memphis, Tenn., where he was under the care of competent physicians of his own selection. Later, he went to the hospital of the railroad company in St. Louis, Mo., where he arrived on the 27th of September. He remained there under treatment for about two weeks, when he returned to Memphis. At that time he promised the chief surgeon, Dr. Outten, that he would return to the hospital. It was a rule of the hospital that employees under treatment there should remain until they were discharged by the chief surgeon, who gave them what was called a "clearance," which they took to the general claim agent of the railroad company. This clearance was a statement of the exact physical condition of the employee, who was expected to take it to the claim agent as a basis for settlement before returning home.

On the 21st of November Dr. Outten wrote Hambright, upbraiding him for not fulfilling his promise to return, stating that he, Dr. Outten, had been placed in an embarrassing position by permitting him to leave; evidently referring to his failure to obtain his clearance and see the claim agent before his discharge. Hambright returned to the hospital shortly after receiving this letter, and was examined by Dr. Outten, the chief surgeon, on

December 3. Dr. Outten then wrote a letter to the general claim agent, making a report upon Hambright's case. He says: "I find a marked deformity of the spinal column, commencing with the twelfth dorsal and involving the first and second lumbar vertebrae. There is undoubtedly a diseased condition here, as not only the spinal processes are enlarged, but seemingly the laminae of the vertebra as well." He goes fully into the case, and concludes as follows: "I cannot tell at this examination whether it will be permanent or not, but, as I have said before, a young man 29 years of age, under intelligent treatment, and when you take into consideration the region of the column involved, there is a bare possibility that it will get well. In any event, it is a serious injury, and one that decidedly menaces his future usefulness. This letter will take place of the clearance, as Hambright will report to you tomorrow morning." Hambright said this letter was given to him sealed, and he carried it to the office of Mr. Jones, the general claim agent, but failed to see Mr. Jones and left the letter for him.

Dr. Outten said that it was his custom to acquaint employees with statements he made to the claim agent, and he is satisfied he did so in this case. He denied the statements attributed to him by Hambright and Phelps hereafter set out. He said that all of his examinations were made in the interest of the employees as well as the company; that he is employed by the company, but that his salary comes out of a hospital fund, which is raised by assessments on all the employees of the company. Hambright says that when Dr. Outten examined him he told him that his injuries were not serious, and that he would be able to go to work by the first of March, and he replied to him, "Doctor, it is up to you; I don't know, and I want to know just what you think." That the doctor said: "It is nothing bad, and you will be all right by the first of March." A friend of Hambright's, one Phelps, said he was with Hambright at this time, and that Dr. Outten told Hambright that he was not permanently injured; that his injuries were not going to be serious, and that he would be able to take his place back by March, 1907.

Hambright returned to Memphis without making a settlement, but subsequently wrote to Dr. Outten that he would like to arrange with Mr. Jones or some of his agents to see him, as

he would like to settle with the railroad company. A pass was furnished him to St. Louis, and he went there, and saw the claim agent on the 28th of December. There is irreconcilable conflict between the testimony of the claim agent and his stenographer and that of Hambright as to the transaction at that time. The claim agent puts in evidence certain writings: first, a proposition signed by Hambright to him, reciting his injury and his condition, and proposing to settle with the railroad company for $1250. A written aceptance follows, signed by Jones as general claim agent for the railroad company. Then follows a formal release, setting forth in full the accident occasioning the injury and the extent of his injury, and that in his judgment the injuries received are of permanent character, and reciting an agreement to settle for $1250 and acknowledging receipt of the same in full settlement of all actions, suits or claims of every class or character arising to him or accruing to him by reason of the injuries referred to. Written upon this by Hambright in his own handwriting is this clause: "I understand this release."

Mr. Jones and his stenographer testified that these papers were dictated to the stenographer in the presence of Hambright, and were signed by him, and that they truly reflect the transaction, and they further testify that Mr. Jones had no communication with Dr. Outten at that time, that Dr. Outten's letter, which served as a clearance, was the sole information he had before him of Hambright's condition. On the other hand, Hambright testifies that Mr. Jones called up Dr. Outten over the telephone, and, after inquiring as to Hambright's condition, listened for a few moments, and then turned to him and said: "Dr. Outten says that you are not badly hurt, and that you will be able to go to work by the first of March." He says that he placed every reliance upon the statement of Dr. Outten, and thought that he knew exactly what he was talking about, and that he consulted no other doctors at that time in regard to his condition, and that, after receiving this information from Mr. Jones, he asked him in regard to his work, and that Jones told him that he would see that his job would be ready for him as soon as he was able to work. He said he told Jones he was badly hurt and wanted pay for his time off; and he says that the settlement was based on the actual wages from the time of his injury to the first of March,

and doctor's bills, expenses and medicines, and that he put in no claim for a settlement for his injuries, and did not know that that element was stated in the writing which he signed. That the papers he signed were not dictated in his prescence or hearing, and that he did not read them over because he did not consider it necessary, as he thought it was a receipt for his wages and expenses as agreed upon.

The $1250 was paid to Hambright, and he returned to his home in Memphis. His physical condition did not improve, and in the latter part of February he consulted physicians there to see if he would be able to return to work the first of March, and was advised that he was permanently disabled from pursuing work in the railroad service requiring physical exertion. The evidence is undisputed that his injuries are of such a nature that he will be unable to do any work which would require physical exertion, and that the only service in the railroad employ for which he would be fitted would be such a position as flagman at a crossing, at a salary of $40 or $45 a month. He says he is not sufficiently educated to do any clerical work, and his earnings are dependent upon comparatively unremunerative positions. He was earning at the time of the injury about $150 per month, and he had just been promoted to a freight conductor, but had not assumed that position at that time.

This suit was brought by Hambright against the railroad company to recover damages for his injuries, alleging negligence. The answer denied negligence, and pleaded contributory negligence, and further pleaded a settlement for $1250 in full satisfaction of the damages on account of the injury. The plaintiff filed an amended complaint, admitting the settlement and the receipt of $1250, and charged fraud and deceit on the part of defendant's chief surgeon and general claim agent in procuring the settlement. The defendant filed an amended answer, denying any false or fraudulent statements in procuring the settlement.

The facts above outlined were developed in the evidence and also the facts as to the cause of the injury; as there is no controversy in this court over the original cause of action, the sole controversy being in regard to the validity of the release; the testimony and instructions pertaining to the liability are not neces-

sary to be set out in order to understand the issues here. The court gave the following instructions:

"3. The execution of the release by the plaintiff, which bears date December 28, 1906, and is put in evidence, is an admitted fact. But if the jury find from a preponderance of the evidence that, before or at the time the consideration was paid for said release and the same was executed, the physician and surgeon of the defendant railway company made an examination of the plaintiff's injuries, and thereupon assured the plaintiff that his injuries were not permanent, but that plaintiff would be able to resume his position and duties with defendant by the first of March following; and, relying upon said statement to be true, he executed said release, but soon afterwards it was developed that plaintiff was permanently injured, and that he never would be able to perform labor in his line of employment, but that at the time of making said statements defendant's physician and surgeon either knew that plaintiff was permanently injured and misrepresented that fact, or was honestly mistaken as to the extent of plaintiff's injuries and misled him into signing said release, then plaintiff is not bound by same, and the jury should so find."

"4. If the jury find for the plaintiff, they will assess his damages at a sum that will compensate him for the bodily injury sustained and the mental and physical pain and suffering endured and to be endured by reason of such injuries. The effect of the injuries on his health according to the degree and probable duration, his pecuniary loss from his diminished capacity for earning money through life, if any such has been proved; and, after you have fixed the sum, you will deduct the amount which defendant has paid plaintiff, and the difference should be the amount of your verdict."

The defendant asked ten instructions, all of which the court refused. The jury returned the following verdict: "We, the jury, find for the plaintiff, and assess his damages at $5,000, after allowing credit for the amount paid." Defendant railroad company has appealed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The evidence is not sufficient to show that the plaintiff was either deceived or misled, or that any fraud was practiced

on him in obtaining the settlement. He is 'bound by the release executed by him, and, there being no showing of want of capacity on his part at the time of his signature, nor of any device to put him off his guard, nor of any request on his part to read, or have read to him, the release, he cannot evade it under the claim that he did not read the release, the opportunity having been afforded him to do so. 50 Ark. 397; 59 Ia. 416; 44 Wis. 638; 18 Kan. 58; 67 Ia. 547; 48 Am. & Eng. R. Cas. 495; 85 Ark. 592; 82 Ark. 112; 19 Am. & Eng. R. Cas. 224; 46 Ark. 217; 82 Pa. St. 198; 98 S. W. 907; 147 Fed. 775; 94 S. W. 808; 16 S. W. 839.; 76 Fed. 71.

2. Contracts are not to be avoided purely on the ground of conjecture or speculation as to the probable duration of an injury. 116 Fed. 918; 79 N. W. 762; 31 S. W. 903; 60 S. W. 429; 61 Minn. 167; 52 N. W. 135; 71 Miss. 1029; 125 Mo. 253.

3. It was error to permit this suit to be prosecuted without requiring a tender of the amount received in settlement. 62 Ark. 274; *id.* 342; 73 Ark. 42; 40 So. 394; 95 S. W. 945; 92 S. W. 855; 147 Fed. 775; 31 S. W. 962.

4. The third instruction given by the court was erroneous in that it directed the jury's attention wholly to appellee's own statement of what Dr. Outten had told him, and they were left under this direction to find that the release was obtained by fraud on that issue only, without consideration of all the facts and circumstances, known to the plaintiff, at the time apprising him of his condition. 116 Fed. 918.

*L. A. Byrne,* for appellee.

1. It is immaterial whether the surgeon wilfully or unintentionally misrepresented the character of appellee's injuries, or whether or not he was mistaken in his judgment. The release is vitiated if the signature thereto was obtained through fraud, either in fact or in law. Actual fraud may be committed by suppressing the facts as well as by misrepresentation. Here there was a co-operation of both. And under the facts presented in this case it was not necessary to tender the amount received in the settlement in order to maintain the suit. 73 Ark. 42; 46 Ark. 217; 83 Ark. 575; 81 Ark. 264; *id.* 508; 82 Ark. 105. If the parties were mistaken as to appellee's condition, and he, rely-

ing on the surgeon's and claim agent's representations, was thereby misled into executing the release, he is not bound by it. 136 Fed. 118; 104 Fed. 440; 108 S. W. 502; 110 S. W. 947.

2. Appellant's contention that because the release states that the plaintiff was permanently injured, this estops him from attacking the contract for fraud, is untenable. The law will not give effect to a stipulation in a contract which is intended to grant immunity to fraud. 143 N. Y. 424, 428.

Hill, C. J. (after stating the facts). I. Appellant says that the evidence is not sufficient to show that the plaintiff was either deceived or misled, or that any fraud was practiced on him in obtaining the settlement. In discussing this, it must be taken that the jury has accepted the testimony of Hambright and Phelps and rejected that of Outten and Jones; and the sufficiency of the evidence must be tested solely upon the accredited testimony.

In *Houston & T. C. Ry. Co.* v. *Brown,* 69 S. W. (Tex.) 651, an employee of the railroad company was injured, and was taken to a hospital, where he was treated by Dr. Stewart, the surgeon of the railroad company. The doctor represented to him that the bones of his arm had knitted and united together, that his arm was well, and that as soon as the swelling had passed away his arm would be as good as ever. Brown, the employee, had stated that he was ready to settle with the railroad company whenever the bones of his arm had knit together, and his arm was cured. The court said:

"The facts in evidence warrant the conclusion that Stewart made the representations and statements to the appellee for the purpose of inducing him to execute the release to appellant, and that the appellee believed the statements were true, and relied upon the same, and was thereby induced to make the settlement and sign the release; that the representations and statements so made by Stewart were false, in that the bones at the time of the trial were not united, and that his arm was practically destroyed in its usefulness. The court correctly submitted this issue to the jury.

"We cannot agree with the contention of appellant that it may escape liability on the ground that the representations and statements made by Stewart was [were] a mere expression of

opinion. It was more than an opinion—it was the statement of a fact. The effect of his statement was that the appellee was a sound man, and that the bones of his arm had knitted together, and that it would be all right. It is true this statement may have been predicated upon his opinion as a medical expert, but the opinion is based upon facts of which he possessed knowledge. The fact that the statement made by Stewart was not intentionally false does not affect the right of the appellee to have the release set aside if he was misled by the statement, and executed the release believing the statement was true. In such a case innocent misrepresentations may as well be the basis of relief as where such statements are intentionally false."

This case was quoted from and approved by the Federal Court of Appeals of the 9th Circuit in *Great Northern Ry. Co.* v. *Fowler,* 136 Fed. 118. In that case a brakeman on a railroad was injured, and was examined by the company's physician, who advised him, after a cursory examination, that his injuries were slight, and that he would be ready for work in two weeks. He consulted no other physician as to the extent of his probable injuries. The decisions touching this exact point are carefully considered and discriminated, and these conclusions reached: "He accepted. the statement and opinion of the appellant's surgeon, and, on the basis of it, received $195 and signed the discharge. We entertain no doubt that such a release, executed under a mutual mistake of fact so induced by the appellant, should be set aside. It is true that where there is no misrepresentation or fraud on the part of the releasee, a releasor cannot subsequently avoid his release on the ground that his injuries were more serious than he thought them to be, even though his opinion at the time of making the settlement may have been based upon that of a physician employed by the releasee to examine and report on the extent of his injuries.   *   *   *   But it is equally true that a mutual mistake of fact or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby."

The case of *Texas & P. Ry. Co.* v. *Jowers,* 110 S. W. (Tex.) 946, is essentially similar to the case at bar. An employee of the railroad company was injured and sent to the same hospital to which Hambright went, and was under the care of Dr. Vaster-

ling, who was also one of the physicians who attended Hambright while he was at the hospital. The course of dealing between the hospital and the patient was shown to be the same in that case as it was in this. The plaintiff's evidence was that he had settled upon the statement of Dr. Vasterling that his injuries were slight, and it was proved that such was not the case. The court said:

"The fifth and sixth assignments are submitted together in the appellant's brief, and assail the court's charge in submitting the issue of bad faith or fraud upon the part of Dr. Vasterling, appellant's physician in charge of the hospital, and Hoeppner, appellant's claim agent stationed at that place, in advising the appellee concerning the extent of his injuries at the time the release was executed. The propositions (two in number) submitted under those assignments indicate that the particular objection was to the action of the court in submitting any such issue at all under the circumstances. The first proposition asserts that fraud cannot be predicated upon a representation which is a mere statement of opinion, and not the statement of the fact. The appellants lose sight evidently of the fact that fraud may be based upon the giving of an opinion as well as the statement of any other fact. In this particular suit the contention is relied upon that the physician fraudulently gave an incorrect opinion, and thereby misled the appellee into agreeing to a settlement. (Citing authorities). The second proposition assumes as a matter of fact that the physician acted in good faith. That, we think, was an issue for the jury." See also, on the general principle involved, *Great Northern Ry. Co.* v. *Kasischke,* 104 Fed. 440, in the Circuit Court of Appeals of the 8th Circuit.

The appellee's evidence fully meets the requirements of the authorities to avoid a release induced by fraud.

II. A special exception was taken to submitting the question of Dr. Outten being mistaken as to the extent of plaintiff's injuries to the jury in the third instruction. As shown by the above authorities, if the settlement was based upon a mutual mistake of fact, predicated upon the doctor's medical opinion as to the present condition of the employee, which opinion induced the settlement, the instruction was correct. If there was room to find that there was such mistake of fact as above indicated, it

would be equally effective to set aside the release, and the appellant cannot be injured by having the most charitable construction given to the statements of Dr. Outten.

III. It is said that Hambright came direct from his own physicians, and ought to have known, and must have known, something of his condition outside of anything Dr. Outten said to him, and that he could not have been misled in this regard. Hambright testified that he had been under Dr. Outten's care from September, and that he did not know his own conditon, but relied upon Dr. Outten, and asked him to tell him his true condition. In the third instruction, the court predicated plaintiff's case on a reliance upon Dr. Outten's statements, and the verdict means that the jury believed he did rely upon them. Dr. Outten says that his examinations were made in behalf of the employees as well as the railroad; that his employment came from the railroad company, and his compensation came from a hospital fund derived from assessments of the employees. Certainly, Hambright had a right to rely upon his good faith, and it does not lie in the mouth of the railway company to say that an employee can not safely rely upon statements of its chief surgeon who occupies this delicate position between it and its employees.

IV. It is next argued that the court erred in entertaining this suit without requiring a tender of the amount received in the settlement of December 28. This point was reserved by exception to the fourth instruction. This contention, however, was settled against the appellant in *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105. In that case, as in this, there was a controversy over a release, one side claiming that it was for a single purpose, and the other side claiming that it was a full release. The court said: "So, if the jury found that she was paid the sum of money as compensation only for the inconvenience and delay caused by the collision, or that she was induced to sign the receipt by false representations, which she relied on, as to its contents, she would not be bound to return the sum paid before suing to recover the damages sustained." If plaintiff's evidence was true, then the tender was not necessary; and the defendant did not ask for the converse of the proposition to be submitted.

V. Objection is made to the third instruction; but, as seen in the previous discussion, it is in accord with the authorities.

VI. Error is assigned for the refusal to give each of the ten instructions asked on the part of the defendant. The first and second of these charged the jury that if the writings introduced in evidence were signed by the plaintiff, he would be bound by the terms and conditions thereof and not permitted by oral testimony to change, vary, add to or contradict them. The rule of evidence forbidding the addition, alteration or contradiction of a written instrument by parol testimony of antecedent and contemporaneous negotiations does not apply where there is an issue of fraud in the procurement of the writing. *Jordan* v. *Fenno,* 13 Ark. 593; *Gauss* v. *Doyle,* 46 Ark. 122; *Colonial & U. S. Mortg. Co.* v. *Jeter,* 71 Ark. 185.

The exception to the refusal of the court to give the ten instructions was a general one, and where such is the case, if any of the instructions are bad, such exception does not preserve for review the other instructions. *Young* v. *Stevenson,* 75 Ark. 181.

There was no error in refusing to give any of these instructions. As they are not in reviewable shape, the questions presented by them cannot properly be discussed.

Judgment affirmed.

Mr. Justice McCULLOCH concurs in judgment, but not in all of the opinion.