DIXIE BAUXITE COMPANY *v.* WEBB.

4-3146

Opinion delivered October 16, 1933.

1026

*John Sherrill,* for appellant.

*W. R. Donham,* for appellee.

MEHAFFY, J. This suit was begun by appellee to recover damages for personal injuries alleged to have been caused by the negligence of the appellant.

On March 17, 1932, while in the employ of the appellant, the appellee, between eleven and twelve o'clock at night, was injured while replacing a belt on the pulleys. He alleged that the belt was old, badly worn, and fastened together with metal belt lacing at the ends; that the belt had been patched in several places by the use of metal belt lacing; that appellee was directed to replace the belt, by an employee who had authority to direct the belt to be replaced, and while he was trying to replace it, the belt suddenly caught on the pulleys, and the thongs of the belt lacing caught appellee's glove, causing his hand to be caught between the belt and the lower pulley; his hand was drawn around the pulley, and his body was thrown upon the framework of the line-shaft; that he sustained injuries to his left chest, the second to the seventh ribs, inclusive, were broken, the second rib being broken in two places; in healing the ribs overlapped and decreased the size and shape of the left chest; the injuries to the chest wall displaced his heart to the right; the muscles to the left chest have become atrophied; the left knee and bones of the left leg below the knee were injured; the upper end of both bones were fractured, and his nervous system was severely shocked; his left shoulder was injured, and his left arm somewhat paralyzed; he has difficulty in breathing, and is very nervous.

The appellant answered denying all the material allegations of the complaint, and pleading contributory negligence on the part of the appellee. Appellant also alleged in its answer that it had made a settlement with the appellee, paying him $289.40, and that appellee executed a release, and appellant pleaded the settlement and release as a defense of appellee's cause of action.

There was a trial by jury, and a verdict and judgment for $15,000. The case is here on appeal.

The appellant contends that the testimony does not show any negligence on its part, and for that reason the court should have directed a verdict in its favor. The appellant is a corporation, and at the time of the injury to appellee was engaged in mining bauxite at Sweet Home, Arkansas. The appellee had been working for the appellant since August 29, 1931, and the injury occurred March 17, 1932. He had, however, been at work as fireman, calciner, and drierman since sometime in February.

Appellee testified that a man named Poole, another employee of appellant, told appellee that the belt was off, and to put it on. This belt operated on a pulley near the floor, and another pulley six or eight feet above the lower one. Appellee testified that Poole had charge of this. He went to work on that day about 11 o'clock P. M., and was injured at about 11:30, about thirty minutes after he had gone to work. He testified that he put the belt on the bottom pulley, and straightened up to adjust the belt, and as he did this, something caught the belt and jerked it on, and jerked his left hand into the pulley; that his hand was caught by one of the steel belt laces.

He testified that his hand was caught by one of the steel belt laces, a steel lacing that you drive through the belt. On each side of the lacing there are hooks and thongs, or teeth. It was an old six-inch belt, and had several patches in it. In patching a belt, there has to be a piece cut out and another piece put in, and they use these steel belt laces to hold the ends together.

Appellee testified that there were four men working at the time, but none of them were where they could see appellee at the time he was injured. He further testified that the belt was frazzled on both sides, had three or four patches in it, and he did not know how many seams were in the belt. When asked how he knew that caught his hand, he said: "That is the only thing that could catch it." He did not see it at the time, and there was bound to have been something sticking up to catch his hand.

Appellee testified at great length as to how the injury occurred, but the above testimony tends to show that the belt was old, frazzled, and that the teeth, or thongs, of the belt lacing caught his hand and caused the injury.

While none of the appellant's witnesses saw the injury, they testified in substance that the belt was in good condition and had only one patch in it, although they testified that it was an old belt. Appellant's witnesses also testified that appellee had been using belt dressing, and that this may have caught his hand.

Appellee testified, however, that he had not used belt dressing, and that the thongs of the belt lacing caught his hand.

As to how the injury occurred, and whether the condition of the belt was the cause of the injury, were questions of fact properly submitted to the jury. The testimony was conflicting, and it was the province of the jury to determine which was true.

Witness for the appellee, Vinas C. Hale, testified that he worked for the appellant some months before the injury to appellee, quitting there sometime in December; that the belt was pretty well worn when he worked there; that the thongs, or teeth, of the lacing stuck out; that he observed the condition of the teeth or thongs, and that at that time they were sticking up.

This court has many times held that it is the province of the jury to reconcile conflicts which exist in the testimony, and if there is sufficient evidence to submit a question to the jury, its finding is conclusive, although we might believe that its finding was against the preponderance of the evidence. *Gibson Oil Co.* v. *Bush,* 175 Ark. 944, 1 S. W. (2d) 88; *International Harvester Co. of America* v. *Hawkins,* 180 Ark. 1056, 24 S. W. (2d) 340; *Chapman & Dewey Lbr. Co.* v. *Bryan,* 183 Ark. 119, 35 S. W. (2d) 80.

The appellant, however, contends that many witnesses testified that the condition of the belt was good. That is true, and it is also true that witnesses other than the appellee testified that the belt had been used a long

while, and had been patched several times. There was therefore substantial evidence to support the jury's verdict on this question.

It was not the duty of the appellee to inspect the belt, pulleys, or machinery, but he had a right to assume that the master had performed its duty, not only to exercise care in furnishing safe appliances with which to work, but to exercise ordinary care to keep them in safe condition.

Appellant contends that it was the duty of appellee to repair minor defects. No one, however, testified that it was his duty to inspect. Several witnesses testified that he was in charge, although this is contradicted by appellee's evidence, but if he were in charge of the other three men, the master owed him the duty to exercise care to furnish him with safe appliances with which to work, the same as if he had not been in charge. He testified that he was not in charge, but whether he was or not, there is no evidence tending to show that it was his duty to inspect the belt. The appellant had a millwright whose duty it was to look after machinery and appliances and inspect them, and, if appellant's evidence is correct that appellee was to repair minor defects, that, of course, meant defects that were called to his attention, because no one contends that it was his duty to inspect.

"Where there is any substantial evidence justifying an inference that the defect or danger was known or ought to have been known by the defendant, the question whether he took reasonable precaution to guard against the defects or danger, is generally a question for the jury." 45 C. J. 1325.

"It is the duty of the master to make inspection for all latent or concealed defects beyond the knowledge of the employee. It is the duty of the master to make proper tests and inspections to discover dangers, and the employee has a right to assume that this duty has been performed by the master, and whether in any particular case the employer has discharged his duty with respect to. making proper test and inspections is ordinarily a ques-

tion for the jury." *Burden* v. *Hughes,* 186 Ark. 707, 55 S. W. (2d) 502.

It is next contended by the appellant that the release was valid and binding. The evidence, in this case as to the extent of appellee's injuries, is in conflict, but there is no dispute that appellee was severely injured. Witnesses for both parties testified that both bones in his left leg were broken, extending up into his knee; that six ribs were broken, some of them overlapped, and that there was some deformity in the chest, and the heart was pushed over to the right one-half inch or one inch; and that there was also an injury to his left arm.

While appellee was at the hospital, a representative of the insurance company secured a statement, which was introduced in evidence, purporting to have been signed by appellee, and witnessed by the insurance agent and another. The undisputed evidence, however, shows that appellee did not sign the statement, but that the agent signed appellee's name to the statement, and then signed as a witness.

Appellee testified that before he left the hospital, a short time before the release was signed, he had a talk with the company physician, about the extent of his injuries, and that the physician told him that he would be all right and able to work; that his injuries did not amount to anything, and that he would be able to go back to work, and be as good as he ever was. He believed what the physician told him, relied on it, and, because of this, signed the release. He would not have signed it if he had not believed what the physician told him. This release was signed at his home shortly after he had been removed from the hospital to his home.

As we have already said, there is no dispute about both bones of his left leg being broken, extending up into the knee; there is no dispute about the condition of his chest; there is no dispute about six ribs being broken, and some of them overlapped; and it is practically undisputed that his left arm is permanently injured.

It is true that two doctors testifying for the appellant said that they thought the condition of his chest was

caused by rickets; which is a disease of childhood. It is said that it usually occurs from nine months to two years, and these physicians thought that that was the cause of the condition of his chest.

The physicians introduced by appellee, however, testified positively that in their opinion the condition of the chest was caused by a crushing injury; that the injury that crushed his chest and broke his ribs moved his heart to the right. They testified that his arm was getting worse, and would continue to get worse, and that he would never be able to work again.

The release was signed when he did not know the extent of his injuries, and thought that he would soon be well. The appellant paid him in settlement, when it took the release, the sum of $289.40, that is, what they paid him and his doctor's bill and hospital bill amounted to this sum. This court has many times held that a release executed by an injured party, relying upon the opinion of the physician of the party responsible for the injury, that the injury was slight and temporary and not permanent, is not binding upon the party making the release. *Sun Oil Co.* v. *Hedge,* 173 Ark. 729, 293 S. W. 9; *St. Louis I. M. & S. R. Co.* v. *Hambright,* 87 Ark. 617, 113 S. W. 803; *St. Louis I. M. & S. R. Co.* v. *Reilly,* 110 Ark. 182, 161 S. W. 1052; *St. Louis I. M. & S. R. Co.* v. *Morgan,* 115 Ark. 529, 171 S. W. 1187.

In the last case, this court said: ''There is also testimony sufficient to warrant a finding that the physician or surgeon who treated the plaintiff at the hospital represented to him that he was not permanently injured, and that the settlement was induced by that statement. Under the doctrine of the case of *St. Louis I. M. & S. R. Co.* v. *Hambright,* 87 Ark. 614, 113 S. W. 803, that constituted grounds for avoiding the release, whether the statements were made by the physician falsely or under mistake of fact.'' *Griffin* v. *St. Louis I. M. & S. R. Co.,* 121 Ark. 433, 181 S. W. 278; *Chicago, R. I. & P. Ry. Co.* v. *Smith,* 128 Ark. 233, 193 S. W. 791; *Kiech Mfg. Co.* v. *James,* 164 Ark. 137, 261 S. W. 24; *Phoenix Utilities Co.* v. *Smith,* 185 Ark. 587, 42 S. W. (2d) 238.

1032

It is next contended by the appellant that the court erred in permitting witness Hale to testify that the belt was pretty well worn when he worked there, and that the thongs or teeth of the lacing stuck out when he was working there, and that he had observed that their condition at that time was that they were sticking up. The only objection made to Hale's testimony was sustained by the court. This witness had testified about the condition of the belt when he worked there, and the last time he worked there was in the latter part of December; but the evidence shows that it was the same belt that he testified about that was in use when appellee was injured, and that it had been in use for more than two years.

It is next contended by the appellant that the court erred in permitting appellee's counsel to examine witness Floyd Brown with reference to the changes made in the plant subsequent to the injury, and to ask if same were not made at the instance of the insurance company. The appellant, however, did not object to that question, but the witness was asked: "I mean the Fire Insurance Company," and he answered: "No, sir, all I know of, we raised it for ventilation." Certainly there could be no error in this. The witness testified that he made it for the purpose of ventilation, and not at the instance of the insurance company.

It is next contended that the court erred in excluding the testimony of Sam Diemer. The witness testified that he did not ask appellee anything about whether he was satisfied, but that he said something to his wife about it, and that both Mr. and Mrs. Webb were satisfied with the settlement. The court said that he did not think this evidence was competent, and the attorney for the appellant said: "Save our exceptions."

In the first place, the record does not show any objection to the ruling of the court, and in the next place it is wholly immaterial whether Mrs. Webb was satisfied or not; what she said would not be competent evidence. Moreover, it was not a question as to whether she was satisfied or not, but the question was whether the release was signed by appellee because of the statement made by

appellant's physician as above set out, and relied on by appellee. There was no error in the court's excluding this testimony.

The appellant then contends that the court erred in permitting exhibition of the insurance policy and testimony regarding the same, before the jury. In the first place, there was no objection by the appellant to this evidence. There was a suggestion on the part of the attorney for the appellant that the testimony that he had stood an examination for life insurance was improper, and the court sustained this suggestion of appellant. There is no evidence in the record tending to show that the policy was exhibited to the jury. The record shows that the policy was exhibited to the witness, and the witness was asked if it did not show March 4, 1932, and he answered that it did, and there was no objection made to either the question or answer. The record does not show that the policy was exhibited to the jury, and it does not show that any objection was made to exhibiting it to the witness; in fact, the only objection made by the appellant at the time was sustained by the court.

Appellant, in its brief, says that counsel for appellee unfolded an insurance policy, which was waved before the jury, and presented to the witness, and features of the policy testified about pointed out, etc. There is no evidence in the record that the policy was waved before the jury, and no objection made to exhibiting it to the witness.

It is next contended by the appellant that the court erred in permitting Dr. Hyatt to testify that he examined appellee for insurance on March 4, 1932, and to exhibit the policy and state the date of examination. Dr. Hyatt testified that he examined witness shortly before the injury on March 4th. This evidence was introduced in rebuttal of that offered by appellant, tending to show that appellee was in poor health prior to the injury, and the only objection made by appellant was that this evidence was not in rebuttal. All the other evidence of Dr. Hyatt was admitted without objection.

Appellant contends that the court erred in refusing to instruct a verdict for appellant at the time appellee rested his case. We have already shown that there was ample evidence to submit the case to the jury, and there was no merit in this contention.

The appellant argues that the court erred in not granting a new trial on newly-discovered evidence. The affidavits submitted with the motion for new trial on the ground of newly-discovered evidence were all with reference to appellee's injuries, except the affidavit of Robert Ruffin, and this affidavit shows that in the trial he was called as a witness by appellant, but never called to the stand, although he was around the courthouse all during the trial, and this witness testified that he was offered $50 by some one to testify to certain facts. The other evidence was merely cumulative.

All of the evidence contained in the affidavits was known, or by the exercise of any diligence could have been known, to the appellant at the time of the trial. *Miller* v. *Johnson,* 184 Ark. 1070, 45 S. W. (2d) 41; *Forsgren* v. *Massey,* 185 Ark. 90, 46 S. W. (2d) 20; *State use Calhoun County* v. *Poole,* 185 Ark. 370, 47 S. W. (2d) 590. There was no error in overruling the motion for new trial.

It is next contended that the instructions given at the request of the appellee were erroneous. Attention is called specially to instruction No. 4. That instruction reads as follows: "You are instructed that it was the duty of the defendant company to exercise reasonable care to furnish plaintiff a reasonably safe belt for use by him in work being performed for defendant, and it was the further duty of the defendant to exercise the same degree of care in maintaining said belt in a reasonably safe condition, unless you find that it was plaintiff's duty to look after the safety of the belt and to keep it in a reasonably safe condition, and to make necessary repairs."

The objection to this instruction is that the preponderance of the evidence shows that it was the duty of the appellee, himself, to keep and maintain said belt in a reasonably safe condition, and, if same became un-

safe, it was appellee's duty to repair it. We think instruction No. 4 correctly stated the law, and that there is no merit in the objection. The objection to No. 5 was similar to the objection to No. 4. Objections were also made to Nos. 6, 7 and 8. We do not set them out, but have carefully examined them, and do not think there was any error in giving said instructions.

Appellant next objected to the court's refusal to give its instruction No. 1, in which the jury were instructed to return a verdict for the appellant. We have already stated that the evidence was sufficient to submit the cause to the jury. We do not deem it necessary to set out the instructions, but we have carefully examined them, and have reached the conclusion that the court did not commit any error in giving or refusing to give instructions; that the instructions given correctly submitted every issue to the jury.

It is finally contended that the verdict is excessive. The verdict was for $15,000.

Dr. W. F. Smith, the surgeon in charge of the Missouri Pacific Hospital at Little Rock, Arkansas, testified that he had examined appellee with reference to his injuries, and had examined the X-rays made by Dr. Law. The pictures showed a fracture of the upper end of both of the bones of the leg, which extended into the joint, resulting in thickening of the membrane; they also showed the fracture of six ribs, the second to seventh inclusive; that the heart was slightly displaced; a depression of the left side of the chest following the injury; that there was considerable flattening of the left side, caused in his opinion by the fracture of the ribs; there was overlapping of sixth and second ribs. This would cause conversity of the ribs, which prevents lung expansion; it would make him more liable to disease of respiratory tract, such as tuberculosis. In his opinion the appellee cannot perform manual labor, and will never be able to labor again, like he did.

Dr. Parmley testified that he specialized in traumatic surgery; that he examined appellee, and the X-rays, and he testified to substantially the same as Dr. Smith.

1036

He also said that on the arm, the forearm, shoulder and left chest there was marked atrophy, at the time there was only slight palsy or jerking; subsequent examination showed it was very bad, and very plain to see that paralysis was increasing. He attributed this to the injury, and it seems to be progressive. From June until the trial, it seems to have increased from a slight tremor to a very marked tremor or palsy; the deflection of the left leg was limited to 30 degrees; that the efficiency of his lung has been reduced to approximately 30 or 35 per cent. In his opinion the appellee will never be able to perform manual labor again.

Dr. Law also testified substantially the same as Dr. Smith and Dr. Parmley. All of them agree that the conditions were caused by the injury. In addition to that, the evidence shows that he has difficulty in breathing; and his injuries are permanent. These injuries must have caused great pain and suffering. We think the evidence is ample to justify the amount of the verdict.

Finding no errors, the judgment is affirmed.