STANDARD OIL COMPANY OF LOUISIANA *v.* RICHERSON.

4-3307

Opinion delivered January 29, 1934.

*T. M. Milling* and *Gaughan, Sifford, Godwin & Gaughan,* for appellant.

*Walter L. Brown* and *Gus W. Jones,* for appellee.

SMITH, J. This appeal has been prosecuted to reverse a judgment recovered by appellee upon the following testimony. Appellee and other employees of appellant, a corporation, were engaged in setting up a boiler. In raising the boiler from the ground they were furnished a block of wood about 10 by 12 inches and 2 feet long, which block of wood was used as a fulcrum, upon which there was placed a joint of 4-inch pipe about 20 feet long and weighing about 200 pounds. The earth was sandy where the block was placed, and it was pressed to some

extent into the earth. After the pipe, which was referred to by the witnesses as a pry or "mope" pole, had been placed on the block, and one end of the pipe under the boiler, fellow employees of appellee placed their weight at the other end of the pipe and pulled down to lift the boiler. It was the duty of Bill Williams, another employee, to place the block of wood securely under the pry pole to keep it from slipping. There was testimony to the effect that Williams negligently failed to perform this duty by releasing the block and permitting it to slip, thus throwing the pole and the weight which it supported upon appellee's foot, thereby inflicting a painful, serious and permanent injury.

Under the facts stated, a case was made for submission to the jury, and, as the instructions given have not been set out, it will be conclusively presumed that the issues of fact were submitted under correct declarations of law.

In its answer, the defendant pleaded a contract with the plaintiff, whereby he agreed that, if he should ever receive an injury while employed by defendant, he would accept in full settlement of any claim for damages the amount provided for a similar injury under the Workmen's Compensation Law of the State of Louisiana. The court refused to permit the introduction of this contract in evidence, and that ruling is assigned as error. Of this contract, counsel for appellant say: "The question of the validity of this contract in the courts of Arkansas has been submitted for decision in this court in the case of *Standard Pipe Line Company, Inc.,* v. *W. M. Burnett,* No. 3245, which case, at the time of the writing of this brief, has not yet been decided. We respectfully refer the court to the argument and authorities cited in the brief of the Standard Pipe Line Company, Inc., in the Burnett case."

The brief referred to was prepared by counsel here appearing, and, since that brief was written, the Burnett case to which reference was made has been decided, and it was held that the contract was not enforceable in the courts of this State. For the reasons inducing that hold-

ing, reference is made to the opinion delivered December 18, 1933, in the case of *Standard Pipe Line Co.* v. *Burnett, ante* p. 491.

There is a conflict as to the extent of appellee's injury, but, according to the testimony on his behalf, the injury is as great or even greater than the complete loss of the foot would have been. The defendant's doctor who treated appellee admitted that: "He has a tenderness there, and always will. He has a broken arch, and any time he steps it will stretch the ligaments and give him pain." The testimony on appellee's behalf is to the effect that he is unable to stand on the injured foot for any considerable time, and he is therefore unable to perform any manual labor, the performance of which requires him to do so. Indeed, we do not understand that it is seriously contended that the verdict is excessive. The insistence is that there is no liability for the injury, and that a full and final settlement of the cause of action was made, which was evidenced by a written contract.

This release appears to have been executed upon a form prepared for that purpose. It was prepared in the defendant's office in Shreveport, and sent by one of its representatives to Smackover, where it was signed by appellee. This release, after reciting the time, place and nature of appellee's injury, contains the following statement:

"The full intent and meaning of this receipt is that I hereby acknowledge to have received from the Standard Oil Company of Louisiana full settlement and compensation for any and all claims for damages which I have or may have against the Standard Oil Company of Louisiana, under the laws of the State of Arkansas, resulting from, or that may result from, said above-described accident, and I further declare and acknowledge that the settlement which I have this day made with the said Standard Oil Company of Louisiana for injuries resulting or that may result from said accident, is a compromise and adjustment of any claim for damages which I have or may have, and that the amount received by me is full and just compensation for the injuries suffered.

"This settlement is accepted and receipt executed by me solely on my own judgment, and I am not acting on any statement made to me by the Standard Oil Company of Louisiana, its officers, agents or employees, or on any statement or representation of any physician or surgeon employed by the said Standard Oil Company of Louisiana."

Appellee had been paid $211.43 by defendant, and this payment was credited by the jury on the verdict for $3,000 which was returned in appellee's favor. Appellee testified that he had been discharged by the defendant's surgeon, who assured him that his foot would be entirely well in the course of a week or so, and that he was induced by this representation to accept the sum paid him in settlement of his cause of action.

It is earnestly insisted that the admission of this testimony was erroneous, as it permits a valid written instrument to be contradicted by parol testimony. This question was thoroughly considered in the case of *St. Louis, Iron Mountain & So. Ry. Co.* v. *Hambright,* 87 Ark. 614, 113 S. W. 803, and a decision was rendered which is adverse to this contention. In that case a release was executed in which it was recited that, in the judgment of the injured party, his injuries were of a permanent character, and written thereon in his own handwriting was the statement: "I understand this release." The execution of the release was admitted by the injured party, who testified that he had been assured by the defendant company's surgeon who had treated him that his injuries were not serious, and that he would soon be able to resume his usual employment, whereas his injuries were serious, and he had not been able to return to work, as the doctor had assured him he would be.

In holding that this testimony was competent, notwithstanding the recitals of the release to the contrary, it was said: "The rule of evidence forbidding the addition, alteration or contradiction of a written instrument by parol testimony of antecedent and contemporaneous negotiations does not apply where there is an issue of fraud in the procurement of the writing."

The authorities were again reviewed in the case of *F. Kiech Mfg. Co.* v. *James,* 164 Ark. 137, 261 S. W. 24. The release in that case recited that the injured party "was acting wholly upon his own judgment as to the nature and extent of his injury, and that no representations had been made in regard thereto upon which he relied." The injured party was permitted, however, to testify that such representations had been made to him, upon which he had relied and had acted in executing the release. It was there held, in effect, that, where a release was procured upon representations which proved to be false made to the servant by the attending physician, who was employed by the master and who attended the servant, that the injuries were slight and temporary, if relied and acted upon, constituted fraud in the procurement of the release and justified its avoidance, and parol testimony was admissible to contradict its recitals.

This holding has been consistently adhered to by this court, and was reaffirmed in the case of *Ozan-Graysonia Lbr. Co.* v. *Ward, ante* p. 557.

The release here in question was prepared before appellee saw it, and, when presented to him, required only his signature, which he affixed to the writing, relying, as he did, upon the assurance of the defendant's doctor, who had treated him, that he would soon be well and able to return to work. It may be said that the company's doctor testified in this case with a frankness quite unusual. He admitted telling appellee that his injury was slight, and that he would soon be well, and he admitted with equal frankness that he was mistaken in this opinion.

No error was committed in the admission of this testimony, as it tended to show fraud in the procurement of the execution of the release, although no fraud was intended, the effect of the mistaken opinion of the doctor being to accomplish what would be a fraud if the result induced by this opinion was conclusive and not open to inquiry.

There appears to be no error, and the judgment must be affirmed. It is so ordered.