CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY *v.* M. C. MOCK

5-5789 . 477 S.W. 2d 465

Opinion delivered March 6, 1972
[Rehearing denied April 10, 1972.]

*Wright, Lindsey & Jennings;* By: *William R. Wilson, Jr.,* for appellant.

*Hall, Tucker & Lovell* and *Patten, Brown & Leslie,* for appellee.

CONLEY BYRD, Justice. This is a suit under the Federal Employers Liability Act, 45 USCA § 51, et seq, by appellee M. C. Mock against appellant Chicago Rock Island & Pacific Railroad Company for injuries received when Mock allegedly stepped in a hole at Rock Island's yard at Bauxite, Arkansas, on November 23, 1967. Rock Island denied any negligence and affirmatively pleaded a $2,000 release signed by Mock on June 21, 1968. Mock contended the release was obtained from him through an incorrect medical opinion rendered to him, and upon which he relied, by Rock Island's company doctor. The jury found the issues for Mock and awarded damages of $37,400, from which the court deducted the $2,000 already paid and entered judgment for $35,400. For reversal Rock Island contends:

"The trial court erred in refusing to direct a verdict for Rock Island:

A. The doctor's statement in this case could not have induced a reasonable man to sign a release, as a matter of law;

B. The evidence demonstrated that Mr. Mock did not, in fact, rely upon the involved statement in signing a release;

C. Mr. Mock's account of the facts and circumstances surrounding this case was so inherently incredible that it could not support a verdict, as a matter of law.

The proof shows that Mock, a conductor on the date of the injury, was "bumped" (displaced by seniority) at the end of that day's work. November 29, 1967, he went to Dr. Paul Hoover, Rock Island's regional surgeon, with a complaint of severe pain in his back. X-rays were made and Mock was treated by Dr. Hoover for a short period before Dr. Hoover suffered a heart attack. Thereafter Mock was advised by letter from Rock Island that

he should arrange to see another company doctor and that Dr. Harlan Holmes was seeing Dr. Hoover's patients. As a result of the letter, Mock was then treated by Dr. Holmes. On June 4, 1968, Dr. Holmes wrote Rock Island that Mock continued to slowly improve but still complained of some low back pain. In the same letter Dr. Holmes stated, "It is hoped that recovery will be very soon." Mock testified that Dr. Holmes told him that he was doing very well and ought to be well before long. Mock says that he was relying upon Dr. Holmes' statement when he signed the $2,000 release on June 21, 1968.

Dr. Holmes testified that he was only an authorized medical examiner for Rock Island and that he only did a few examinations. On direct he stated that he had treated Mock for an injury that allegedly occurred when he stepped in a hole. His notes did not indicate that Mock was on duty when he stepped in the hole, but if Mock had told him that he was on duty when it occurred, his notes would have shown that information. With reference to the June 4 letter, Dr. Holmes testified:

"Q. Doctor, I show you what's been marked and admitted as Plaintiff's Exhibit 16 which purports to be a letter from you dated June 4th '68. I would like to ask if you wrote that letter?

A. Yes, sir. I wrote the letter.

Q. And if I may, I will read the last sentence. I believe you state, 'It is hoped recovery will be very soon.'

A. Yes, sir.

Q. Does that reflect an opinion on your part that a recovery will be very soon?

A. I stated I hoped it would be very soon.

Q. You didn't have an opinion at that time it would be?

A. No, sir."

On cross-examination Dr. Holmes again stated that if Mock had told him that the injury occurred on the job, his medical notes would have shown that information. It then developed that Dr. Holmes on March 22, 1968, had written Rock Island as follows:

"Dear Sir: I first saw the above named on December 22, 1967, with a history of having stepped in a hole injuring his back on November 22, 1967, while on duty."

Dr. Holmes did not know whether or not he had authorization from Mock to furnish medical information to Rock Island. He regularly furnished progress reports on Mock to Rock Island at Rock Island's request and in doing so considered himself as representing Rock Island. He could not remember exactly what he had told Mock about his condition in June. On redirect Dr. Holmes stated that his notes indicated Mock was worse on June 17th and 21st and that information would have come primarily from the patient. While considering himself as representing Rock Island, he did not consider himself as a company doctor.

There was evidence that Mock made application to Travelers Insurance Company for hospitalization insurance benefits on March 4, 1968, in which he stated that his injury occurred on the job. Travelers later refused payment because their policy only covered off duty injuries.

Because Mock had failed to promptly report the injury, Rock Island had discharged him. At a reinstatement hearing on March 11, 1968, Mock had testified. In testifying at trial on cross-examination with reference thereto the record shows:

"Q. In referring again to your investigation, Mr. Mock, you were asked the question: 'Did you incur while on duty as conductor at about 2:30 a.m., November 23, 1967, at Bauxite Arkansas,

an injury to yourself?' And your answer, 'In checking my train which was made up on B & N One track, I was walking between B & N and Rock Island three, when I stepped in a hole and felt a slight pain run up my back—In thirty minutes the pain left and I felt all right.' Question: 'Was the pain you suffered in your back a result of stepping in a hole? Answer: 'It could have been.

A. Correct.

Q. That is the answer you gave at that point?

A. Correct.

Q. Now then, two pages over you were asked the question: 'Mr. Mock, were you injured while on duty as a conductor at Bauxite, Arkansas, at or about 2:30 a.m., November 23, 1967?' Your answer was: 'No sir. I don't think so.' Is that correct?

A. It could be.

Q. I am not saying that is what happened. That is the answer you gave at that time?

A. Right."

After Mock signed the release on June 21, 1968, he went to Travelers Insurance Company and made the following statement:

"On March 4, 1968 I turned in a claim to The Travelers Insurance Company for an injury. I indicated on the first notice of claim that I stepped in a hole at Bauxite, Arkansas while on duty for the railroad and hurt my back. I stepped in a hole at a lake on my property at Alexander and hurt my back. This happened Nov. 23, 1967.

"I thought I might be compensated by Rock Island for showing an injury that happened on the job. I have read the above statement and it is true and correct to the best of my knowledge and memory."

Concerning the above statement, Mock testified that when he signed the release and resignation Mr. Pumphrey, appellant's claims agent, told him that if he would go to Travelers and sign such a statement, Travelers would pay his hospital bill of some $500 or $600. As a result of signing the statement Travelers did pay $461.75 to the hospital.

The law with respect to the validity of releases such as is here involved is set forth in *Kansas City Southern Railway Company* v. *Sanford,* 182 Ark. 484, 31 S. W. 2d 963 (1930), and *Dixie Bauxite Company* v. *Webb,* 187 Ark. 1024, 63 S. W. 2d 634 (1933). In the latter case, page 1031, it was said: "This court has many times held that a release executed by an injured party, relying upon the opinion of the physician of the party responsible for the injury, that the injury was slight and temporary and not permanent, is not binding upon the party making the release." The appellant relies upon *Benedum-Trees Oil Company* v. *Sutton,* 198 Ark. 699, 130 S. W. 2d 720 (1939). As we view the record there is substantial evidence from which the jury could have found that Dr. Holmes' statement induced Mock to sign the release and that in signing the release Mock relied upon the doctor's statement.

Jurors are the sole judges of the weight and credibility of witnesses. AMI 103. If Dr. Holmes' testimony could be accepted as uncontradicted and unimpeached, then appellant's argument that this case should be controlled by *Benedum-Trees Oil Company* v. *Sutton, supra,* would be more persuasive. Because of his relationship with the railroad, it cannot be considered uncontroverted, because of contradiction by both direct and circumstantial evidence, nor can we say with assurance that the jury should not have weighed its credibility. Obviously, we

cannot hold as a matter of law that there is no credible evidence to support the jury verdict.

Affirmed.

HARRIS, C. J. dissent.